STOULIG, Judge.
This is an appeal by the plaintiff-employee, Morgan P. Chrisham, from an adverse judgment dismissing his suit against the executive officers of his employer for injuries sustained in a work related accident. Named as parties defendant were H. W. Arvin, President, P. E. Lewis, Vice President, Roy Dunn, Secretary-Treasurer, and Donald Blum, Assistant Superintendent, of Borton, Inc.
In his written reasons for judgment, the trial judge concluded that none of the witnesses’ testimony corroborated the plaintiff’s version of the accident and therefore he failed to bear the burden of proof necessary to cast any of the defendants in judgment.
As a prerequisite for recovery of damages the plaintiff must establish that the employer delegated to one of the defendant executives the fulfilling of a personal duty owed to Chrisham and that the breach of this duty caused damage to the plaintiff. In other words the plaintiff has the burden of proving the indispensable elements of: (1) the executive officer to whom the duty of fulfillment was entrusted; and (2) the particular personal duty owed that was breached causing plaintiff damage. General administrative responsibility of an executive office does not fall within the category of a personal duty.
At the outset it must be noted that there is no evidence that the defendants, H. W. Arvin, P. E. Lewis and Roy Dunn had any knowledge or involvement in the circumstances surrounding the occurrence of the accident. Plaintiff testified he never knew or saw these defendants and knew of nothing they personally had to do with this job. There is no testimony by the other witnesses indicating these defendants had any direct knowledge of the specific day to day work being performed or did they in any manner participate in the performance of the work under the contract. Plaintiff in his brief did not question the correctness of the dismissal of his suit against these defendants. The record clearly warrants such action and we affirm the trial court’s action.
There remains for consideration the following two issues: (1) Was there breach of a personal duty owed to the plaintiff?; and (2) Is the remaining defendant, Donald Blum, an executive officer?
The accident causing plaintiff’s injuries occurred on August 7, 1972 and is therefore not affected by the 1976 amendment to R.S. 23:1032 which bars executive officer suits.
It is undisputed that plaintiff’s employer, Borton, Inc., was engaged in installing an overhead grain conveyor system known as a “buehler” for Bunge Grain Elevator at Des-trehan, Louisiana. The housing for the conveyor was twenty inches square, approximately seventy feet in length and was suspended from the steel rafters supporting the roof. The iron plates for the housing were ten feet long, twenty inches wide, and three-eighths inches thick and weighed about one hundred fifty pounds. These plates were lifted manually onto the ten foot scaffolding by means of ropes attached through the bolt holes at each end and required two men to man the ropes. A double tier Patent Scaffolding with ladder access was provided as a work platform.
According to the plaintiff his co-worker Warren Weaver threw him a rope which had been threaded through the hole of a ten *460 or twelve foot piece of metal and he proceeded to raise it to the platform. When he had lifted it approximately halfway and had grasped it with his hands the plate began “whipping”. Simultaneously with this development the boards on the platform began shifting and this combination of circumstances caused plaintiff to lose his balance forward and fall ten feet to the floor below. He landed on his feet facing the scaffolding.
The plaintiffs testimony concerning the movement of the platform boards is somewhat equivocal. At first he stated he thought the boards moved; later he said the boards shifted; and finally it happened so fast he didn’t know but thought the boards slipped or shifted.
As opposed to the plaintiff’s version of the incident, defendants contend that Chris-ham while climbing up the ladder to the platform lost his grip and fell backwards to the floor. The place from which plaintiff fell is of great significance since it is alleged that the personal duty breached was the failure to provide safety devices on the scaffolding platform.
Because of the many unusual circumstances surrounding the occurrence of the accident and the need to establish from where plaintiff fell, a more detailed examination of the testimony bearing upon these facts must be made.
Plaintiff presented the testimony of two co-workers, Warren Weaver and Robert Hubbard. The defendants’ witnesses to the accident were its foreman Larry Faucett and an employee, John Catanzaro. None of these witnesses actually saw plaintiff fall. None of them heard the piece of metal plaintiff dropped strike the floor. All testified that plaintiff was facing the scaffold when he landed on the floor. All stated that one man alone could not lift the one hundred fifty pound iron buehler place from the floor to the scaffold platform.. All confirmed there were no railings on the scaffold nor were safety belts furnished even though they were available. All located the scaffold as being perpendicular to the conveyor housing.
Weaver testified that he was bending, over tieing a piece of material when plaintiff’s hand struck him in the back and when he turned around Chrisham told him he had fallen. He was certain plaintiff was on the scaffold when he fell, though he was not looking in his direction. Also that the plaintiff was probably handling a piece of angle iron at the time since the iron plate was too heavy for one man to lift. He acknowledged that safety belts were not normally used at ten foot heights and he knew of no particular safety device that should have been used.
Hubbard testified he thought the plaintiff was behind him on the scaffolding but did not see him when he fell. He stated that guard rails on the scaffold would be impractical since it would require the heavy material to be lifted higher and therefore made more difficult. He too declared that safety belts were never used at the ten foot level. He speculated that if an individual tried to lift a buehler iron plate alone it could pull him off balance.
Faucett, the defendants’ foreman, stated plaintiff assisted in the erection of the scaffold which he described as the standard commercial rental type identified as “Patent Scaffolding” with an attached ladder. Each section is five feet in height and two sections were joined to provide a work platform ten feet above the floor. The flooring consisted of planks seven inches longer than the scaffolding which provided three and one-half inches on each end to nail a two by four wooden cleat to prevent it from slipping lengthwise. The six inch stub on each corner of the scaffolding for stacking additional sections is used to keep the flooring from shifting sidewise.
Faucett testified that the seven foot scaffolding was centered perpendicular to the two foot conveyor housing and the remaining five feet afforded a working platform on each side of the housing of two and one-half feet by four feet, the width of the scaffolding.
Faucett also maintained that plaintiff descended from the scaffolding with him and *461 that he last saw Chrisham before the accident with his hand on the lowest rung of the ladder preparing to ascend. Within three or four seconds he heard a noise and saw plaintiff lying on the floor. Plaintiff told him “Larry I’m sorry; I just turned loose”.
This witness opined that safety belts were impractical at a ten foot level since more slack than this would be required in the safety lines so the men could move about. It would have to be disconnected every time someone left the platform and if someone fell in all probability he would strike the floor before exhausting the slack in the safety line.
One interesting aspect surrounding the accident is the position in which the plaintiff landed after falling, i. e., facing the scaffolding. On this one factor defendants’ version that the plaintiff fell backwards is more plausible. It is difficult to reconcile plaintiff’s account with the fact that after losing his balance and falling forward his six feet four inch frame made a complete somersault within ten feet and he came to rest on his feet facing the scaffolding.
In view of the unusual and sometime bewildering circumstances the trial judge was required to make an evaluation of the credibility of the witnesses and of the probative value of the evidence. He concluded that plaintiff failed to prove by a preponderance of the evidence how the accident occurred. Under the mandate of Canter v. Koehring Co., 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), it is not our appellate function to substitute our evaluation of the evidence for that of the trial judge unless the record establishes that his factual conclusions are manifestly erroneous. We do not find such a situation to exist.
Plaintiff alleges that the defendants breached their personal duty owed to him by failing to provide him with a safe place to work. He particularizes the breaches as failing to: (1) hold safety meetings; (2) provide guard rails; and (3) furnish safety belts.
All of these alleged breaches presuppose the plaintiff fell from the scaffolding platform which the trial court concluded he failed to prove. For this reason they are not applicable to the proven facts of this case.
Assuming arguendo that the accident did occur as plaintiff contends, there is no expert testimony of a construction engineer, safety expert, general contractor, or general superintendent presented by plaintiff to prove that the type of scaffolding or the manner in which its flooring was secured, the procedure for lifting materials, or the lack of guard rails or safety belts violated the standard of the construction industry or breached a legal duty owed to the plaintiff. There is no contention that defendants violated any OSHA regulations or state laws.
The proof adduced by the plaintiff lacks the satisfactory quality of legal certainty and reasonable preponderance necessary to warrant that a personal duty owed to the plaintiff has been breached by the defendants which would render them liable.
In view of this finding no need exists for us to determine if Donald Blum, the field superintendent is an executive officer of Borton, Inc.
For these reasons the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.